**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

|  |  |  |
|---|---|---|
| JULIE JENSEN, individually and CHARLES MEYER, by and through his next friend JULIE JENSEN, Plaintiffs, | : | |
| v. | : | No. 2:06-cv-41 |
| ELAINE CASHIN, as ADMINISTRATOR for the ESTATE OF NORMAN WOOLARD and PAUL LENO and ELAINE LENO, as ADMINISTRATORS for the ESTATE OF PHILIP LENO, Defendants/Counterclaim Plaintiffs, | : | |
| v. | : | |
| JULIE JENSEN, individually, and CHARLES MEYER, by and through his next friend JULIE JENSEN, Counterclaim Defendants. | : | |

<u>**MEMORANDUM AND ORDER**</u>

This suit results from a tragic car accident in which Norman Woolard and Philip Leno were killed.  The two were passengers in a car owned by Julie Jensen and driven by her son, Charles Meyer. Plaintiffs/Counterclaim Defendants Jensen and Meyer ("Counterclaim Defendants") commenced this suit on February 23, 2006, seeking a declaratory judgment that they are not liable for Woolard and Leno's deaths, or that their liability is offset by Woolard and Leno's comparative or contributory negligence. Elaine Cashin, as Administrator for the Estate of Norman Woolard,

and Paul and Elaine Leno, as Administrators for the Estate of Philip Leno ("Counterclaim Plaintiffs"), have filed counterclaims seeking compensatory and punitive damages against Jensen and Meyer.

Currently before the Court is the Counterclaim Defendants' Motion for Judgment on the Pleadings as to Punitive Damages, filed October 13, 2006.  A hearing was held on this and other pending motions on December 22, 2006.  For the reasons set forth below, the Motion (Doc. 35) is GRANTED in part and DENIED in part.

## I.  <u>BACKGROUND</u>

When evaluating a motion for judgment on the pleadings, the Court is required by law to examine the facts as pleaded by the non-moving party, in this case the Counterclaim Plaintiffs. At this stage, no allegations have been proved nor any facts found. Rather, the Court must evaluate here whether the allegations contained in the Counterclaim Plaintiffs' pleadings state a cause of action upon which relief could be granted if these facts were later to be proved.  Therefore, the facts are stated as alleged by the Counterclaim Plaintiffs.  The facts as recited here are not findings of fact by this Court and are based on the Counterclaim Plaintiffs' allegations, not on any evidentiary record.  In some cases, Elaine Cashin and Paul and Elaine Leno have alleged slightly different facts; those differences are

2

noted where necessary.

Julie Jensen and her son, Charles Meyer, spend a portion of every year at a summer home in Brownington, Vermont.  During the summer of 2004, Charles Meyer was 14 years old.  He did not have a license to drive a car, and was immature, with learning difficulties and developmental issues which significantly impaired his ability to exercise reasonable diligence, due care, and caution.  Jensen was aware of these issues.  Meyer was far from competent to drive, but as he appeared older than his 14 years, it was possible for others to mistake his ability and authorization to drive.  Jensen purchased a 1994 Toyota Supra, a high-performance race car, for Meyer on or about April 29, 2004.

During the summer of 2004, Norman Woolard, a resident of Westmore, Vermont, was working for Forever Green Landscaping & Lawn Mowing, and was assigned to do some landscaping work at Jensen's summer home in Brownington.  Woolard was 16 years old and had obtained his junior operator's license less than two weeks before.  That license entitled him to operate a motor vehicle only under certain conditions.  It did not entitle him to operate a motor vehicle in the course of his employment or for any monetary gain during the first year after its issuance.  For the first three months after its issuance, he could operate a registered motor vehicle with the consent of its owner only under the following circumstances: alone, with no other occupants in

3

the vehicle; with a licensed parent or guardian in the vehicle;
with a licensed or certified driver education instructor in the
vehicle; or with a licensed person of at least 25 years of age.

On August 23, 2004, Meyer approached Woolard, bragging about
his car, and asked Woolard if he wanted a ride.  Meyer obtained
the keys to the car from his mother, and the two left the
property in the vehicle for about 20 minutes.

On August 24, 2004, at around 3:15 p.m., Meyer again
obtained the keys to the Toyota Supra from Jensen; by handing
over the keys, Jensen supplied actual and physical control of the
vehicle to Meyer.[1]  Meyer and Woolard left together in the car.[2]
Jensen did not make any inquiry as to Woolard's driving
experience or legal ability to drive.   Meyer and Woolard picked
up Woolard's friend, Philip Leno, who was 17 years old and a
resident of Orleans, Vermont, at his home.  When the two picked
up Leno, Meyer was driving.

Sometime after 4 p.m. on August 24, 2004, the vehicle,

---

[1]Neither Cashin's nor Elaine and Paul Leno's counterclaim
makes any specific claim as to Jensen's intention in handing over
the keys.  Notably, neither alleges that it was her intention
that Meyer drive the car; rather, they allege that she entrusted
the car to him.

[2]Cashin alleges that Jensen negligently entrusted the
vehicle to Meyer; Paul and Elaine Leno also allege that she
entrusted the vehicle to Meyer, but have alleged in the
alternative that she negligently entrusted it to Woolard. There
is no allegation in either counterclaim as to who was driving
when Meyer and Woolard left Jensen's summer home.

driven by Meyer, crashed into rock ledges on Vermont Route 5A in Westmore.  Meyer had been driving as fast as 100 miles per hour in a 35 mile per hour zone, and failed to obey other traffic safety laws.[3]  The crash demolished the vehicle and killed Woolard and Leno.

Jensen brought the present action on February 23, 2006 on behalf of herself and Meyer, seeking a declaratory judgment that they are not liable for Woolard and Leno's deaths, or that their liability is offset by that attributable to Woolard and Leno.

Cashin, acting as Administrator for the Estate of Norman Woolard, her son, has asserted counterclaims against Meyer as follows: negligence; recklessness and gross negligence; and violation of safety statutes constituting negligence per se.  She has asserted counterclaims against Jensen as follows: negligent entrustment of a dangerous instrumentality; violation of a duty to protect; failure to control conduct of her servants; failure to anticipate dangerous use of subject vehicle; failure to act; lender of automobile known to be dangerous; abnormally dangerous activity; vehicle unlikely to be made safe for use; chattel for use by persons known to be incompetent; reckless disregard of

---

[3]Both Cashin and Paul and Elaine Leno allege in their counterclaims that Meyer was driving at a speed estimated at 100 miles per hour.  At oral argument on this and other motions, counsel for the Counterclaim Plaintiffs alternately suggested that he traveling at a speed of 70 miles per hour.  Whether the speed alleged is 70 or 100 miles per hour does not affect the Court's holding on this Motion.

safety; violation of safety statutes; permitting improper persons to use things or engage in improper activities; or outrageous conduct causing severe emotional distress.

Cashin seeks compensatory and punitive damages.  She states in support of her claim for punitive damages that "Meyer and Jensen, individually, acted with willfulness or with callous and reckless indifference to the safety or right of others.  Meyer and Jensen each acted in disregard of a high and excessive degree of danger about which each knew or which would be apparent to a reasonable person in their respective positions."

Paul and Elaine Leno, as Administrators for the Estate of Philip Leno, their son, have asserted the following counterclaims against Meyer: negligence; recklessness and gross negligence; and violation of safety statutes resulting in negligence per se by Meyer.  They have asserted the following counterclaims against Jensen: violation of a duty to protect; violation of a duty of a parent or one acting *in loco parentis* to control the conduct of a child; failure to control conduct of her servants; violation of duty as owner/possessor of the vehicle to control the conduct of Meyer and/or Woolard; violation of a duty to act when prior conduct is found dangerous; suppliers, donors and lenders of automobiles found to be dangerous; abnormally dangerous activities; twin turbo Supra unlikely to be made safe for use; chattel for use by person known to be incompetent; reckless

disregard of safety; violation of safety statutes; permitting
improper persons to use things or engage in activities; and
outrageous conduct causing severe emotional distress.

They allege that Jensen and Meyer each acted "with
willfulness and with callous and reckless indifference and
disregard to the safety and rights of others.  Each acted in
disregard of an extremely high and excessive danger about which
each knew or should have been known to a reasonable person in
each of their respective positions," so as to justify punitive
damages.

## II.  DISCUSSION

A defendant is entitled to judgment as a matter of law on
the basis of the pleadings under Fed. R. Civ. P. 12(c) if the
facts as pleaded state no cause of action upon which relief can
be granted.  The Court must accept the complaint's allegations as
true and draw all reasonable inferences in favor of the non-
moving party.   The Motion should be granted only if "it appears
beyond a reasonable doubt that the plaintiff[s] can prove no set
of facts in support of [their] claim[s] which would entitle
[them] to relief." Irish Lesbian and Gay Org. v. Giuliani, 143
F.3d 638, 644 (2d Cir. 1998) (quoting Sheppard v. Beerman, 18
F.3d 147, 150 (2d Cir. 1994).

The Counterclaim Defendants argue here that because the
Counterclaim Plaintiffs have not alleged that Jensen or Meyer

7

actually intended to cause harm or was motivated by personal ill will toward either Leno or Woolard, there are no facts alleged that could establish the requisite intent for punitive damages.

This Court has jurisdiction over this case based on the diverse citizenship of the parties; therefore, the case is governed by Vermont's substantive law.  Punitive damages are permissible in Vermont where a defendant's wrongdoing "has been intentional and deliberate, and has the character of outrage frequently associated with crime." Brueckner v. Norwich Univ., 169 Vt. 118, 129, 730 A.2d 1086, 1095 (1999) (quoting W. Keeton, et al., Prosser and Keeton on the Law of Torts § 2, at 9 (5th ed. 1984)).[4]  Vermont requires a plaintiff to demonstrate that a defendant acted with malice to recover punitive damages.  The longstanding test in Vermont holds that malice "may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights." Id.

The parties dispute the viability of  "reckless or wanton

---

[4]The Counterclaim Plaintiffs note in support of their punitive damages claims that Meyer was charged with manslaughter, and argue that criminal charges could have been brought against Jensen.  However, the availability of criminal penalties does not necessarily indicate the availability of punitive damages.  See Bolsta v. Johnson, 176 Vt. 602, 603, 848 A.2d 306, 308 (2004) (punitive damages unavailable despite defendant's violation of the law by driving while intoxicated; "[w]illful violation of the law is insufficient evidence of malice, if not accompanied by "a showing of bad faith.").

disregard" as evidence of malice following <u>Brueckner</u>.   In

<u>Brueckner</u>, the Vermont Supreme Court refused to allow punitive

damages based on "indifference attributable to negligence," or

"conduct characterized as 'heedless disregard of the

consequences.'"   <u>Brueckner</u>, 169 Vt. at 132, 730 A.2d at 1096-97

(quoting <u>Tuttle v. Raymond</u>, 494 A.2d 1353, 1361 (Me. 1985)).

 Some subsequent Vermont Supreme Court cases continued to

recite the standard for malice including the "reckless or wanton

disregard" prong following <u>Brueckner</u>.   See <u>Pion v. Bean</u>, 176 Vt.

1, 14, 833 A.2d 1248, 1259 (2003) (holding that a "showing of

'conduct manifesting personal ill will or carried out under

circumstances evidencing insult or oppression, or even by conduct

showing a reckless or wanton disregard of one's rights' will

suffice" to show malice, with no qualification regarding the

necessity of any bad motive).

 The Vermont Supreme Court's 2004 holding in <u>Bolsta v.</u>

<u>Johnson</u>, 176 Vt. 602, 848 A.2d 306 (2004) complicates the picture

regarding the level of "reckless or wanton disregard" which may

justify the imposition of punitive damages.   The Court there

continued to cite "conduct showing a reckless disregard to the

rights of others," as one means of showing actual malice.

However, it cited <u>Brueckner</u> for the proposition that "there must

be some evidence of bad motive, as mere negligence or even

recklessness are not sufficient to show malice and therefore do

not justify the imposition of punitive damages." <u>Bolsta</u>, 176 Vt. at 602, 848 A.2d at 308.   The <u>Bolsta</u> Court refused to find evidence of malice where "[h]owever wrongful, [the defendant's] conduct does not evince *more than* a reckless disregard of the right of others."   <u>Id.</u> at 603, 308-309 (emphasis added).   <u>See also</u> <u>Monahan v. GMAC Mortgage Corp.</u>, 179 Vt. 167, 189, 893 A.2d 298, 3 (2005)(holding, in context of breach of contract claim, that "intentional, wrongful, and even illegal conduct will not justify punitive damages unless the evidence supports an inference of 'bad motive' evincing a sufficient 'degree of malice.').

<u>Bolsta</u> does appear to hold that some evidence of "bad motive" is required in order to find malice, but does not define "bad motive."   The Counterclaim Defendants argue, based on this language, that the Vermont Supreme Court intended to allow punitive damages only where the defendant was motivated by personal ill will.   However, "malice" in a legal sense is not ordinarily defined so narrowly.   For example, second-degree murder is defined as the "unlawful killing of a person with 'malice aforethought.'" <u>State v. Hatcher</u>, 167 Vt. 338, 344, 706 A.2d 429, 432 (1997).   "Malice aforethought" is defined in that context as "'an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm.'" <u>Id.</u>

(quoting <u>State v. Doucette</u>, 143 Vt. 573, 582, 470 A.2d 676, 682 (1983)).  Therefore, a definition of "malice" including states of mind other than an intent to cause harm would be consistent with other areas of Vermont law.

The Vermont Supreme Court has not stated, in <u>Bolsta</u> or elsewhere, that personal ill will is required for punitive damages.  In addition, it continues to recite a test which states that reckless disregard for the rights of others may be proof of malice for punitive damages purposes.  <u>Bolsta</u> makes it clear that mere negligence, or even ordinary recklessness, is not sufficient to prove malice.  However, it does not foreclose the possibility that extraordinary or gross recklessness could be evidence of malice sufficient to support punitive damages.

Based on the above standards, the Court is not prepared at this stage of this case to hold that the Counterclaim Plaintiffs will be unable to prove any set of facts which could entitle them to punitive damages against Meyer.  Charles Meyer's alleged conduct in this case, including driving without a license, and without the competence to drive, at a speed of 70 or 100 miles per hour, could potentially constitute gross recklessness sufficient to allow punitive damages.  While such an award would obviously depend on facts which remain to be proved in this case, it is not impossible that evidence might be produced which would support a punitive damages award.  Therefore, the Motion for

11

Judgment on the Pleadings as to Punitive Damages is denied as to Charles Meyer.

With regard to Jensen, even accepting all of the Counterclaim Plaintiffs' allegations as true, there is no set of facts alleged that could warrant punitive damages.  It is alleged that Jensen gave the keys of a vehicle to her 14 year old son. This conduct does not rise to the level of recklessness which could constitute evidence of malice.  Notably, it is not alleged that Jensen actively intended her son to drive the car or encouraged him to do so.  While Jensen's conduct may have been a breach of her duty to Woolard and Leno, no facts are alleged which suggest that she acted maliciously, with a bad motive, or in reckless or wanton disregard of Woolard and Leno's rights.[5]

The Motion for Judgment on the Pleadings as to Punitive Damages is granted, without prejudice, as to Jensen.  While the facts as currently alleged would not support a punitive damages award, if during the course of discovery the Counterclaim Plaintiffs discover facts showing that Jensen did act maliciously, they are certainly free to file a punitive damages claim against her at that time.

_____

[5]The Counterclaim Plaintiffs assert that Jensen should be held to a higher standard of care based on her education and expertise.  As a tax attorney Jensen might be held to a higher standard of care in a case involving tax law.  However, the subject matter of this case bears no relationship to the subject matter of her expertise.  Therefore, no higher standard of care is merited.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, the Motion for Judgment on the Pleadings as to Punitive Damages is GRANTED as to Jensen and DENIED as to Meyer.


Dated at Burlington, Vermont this 5th day of January, 2007.


<u>/s/ William K. Sessions III</u>
William K. Sessions III
Chief Judge