```
                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT
                                               :
JULIE JENSEN, individually                     :
and                                            :
CHARLES MEYER, by and through his next         :
friend JULIE JENSEN,                           :
     Plaintiffs,                               :
                                               :
     v.                                        :   No. 2:06-cv-41
                                               :
ELAINE CASHIN, as ADMINISTRATOR for            :
the ESTATE OF NORMAN WOOLARD                   :
and                                            :
PAUL LENO and ELAINE LENO, as                  :
ADMINISTRATORS for the ESTATE OF               :
PHILIP LENO,                                   :
     Defendants/Counterclaim Plaintiffs,       :
                                               :
     v.                                        :
                                               :
JULIE JENSEN, individually,                    :
and                                            :
CHARLES MEYER, by and through his next         :
friend JULIE JENSEN,                           :
     Counterclaim Defendants.                  :
```

## OPINION AND ORDER

On March 18, 2008, Elaine Cashin, as Administrator for the Estate of Norman Woolard, and Paul and Elaine Leno, as Administrators for the Estate of Philip Leno ("Counterclaim Plaintiffs") jointly filed a motion to compel disclosure of documents related to the August 24, 2004, automobile crash underlying this litigation. Counterclaim Plaintiffs seek discovery of specific data and photographs gathered by Chip Johnston, consulting expert to Julie Jensen and Charles Meyer

("Counterclaim Defendants").  In particular, Counterclaim Plaintiffs seek the following: total station data and the scene diagrams generated therefrom, accelerometer data necessary to determine roadway drag, and photographs of the subject vehicle and the crash scene.  On March 21, 2008, Counterclaim Plaintiffs filed a motion for a protective order with regard to disclosure of expert reports and depositions of Brian Chase and Stephen Shapiro.  For the reasons set forth below, Counterclaim Plaintiffs' Motion to Compel (Doc. 190) and  Counterclaim Plaintiffs' Motion for Protective Order (Doc. 198) are GRANTED.

## I.   BACKGROUND

Shortly after the automobile accident in 2004, counsel for Meyer retained the services of Johnston, an accident reconstruction specialist, in anticipation of criminal proceedings.  Within days of the accident, Johnston began an investigation: he used a total station to survey the scene and photographed the scene and the vehicle.  Johnston may also have used a Vericom 3000 or other accelerometer to gather information necessary to determine roadway drag at the scene.  The Vermont State Police also conducted an investigation immediately after the accident.  Although the state troopers gathered information regarding the roadway and scene, they utilized lower-level technology, gathering physical measurements in lieu of a total station, and using a drag sled instead of an accelerometer.

On December 18, 2006, Counterclaim Plaintiffs first sought to compel production of all documents obtained and generated by Johnston. The Court heard argument from the parties on this motion *inter alia* on May 29, 2007. At that hearing, the Court denied the motion as premature. Counterclaim Plaintiffs subsequently renewed their request that Counterclaim Defendants provide Johnston's photographs and data in September 2007 and in March 2008. With these requests, Counterclaim Plaintiffs have submitted statements from their proposed expert, Brian Chase. Counterclaim Plaintiffs assert that these submissions satisfy the requirements under Fed. R. Civ. P. 26(b)(3).

## II.  DISCUSSION

*A. The Work Product Doctrine*

The work product doctrine, codified in Rule 26(b)(3), limits discovery of "documents and tangible things . . . prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). The Second Circuit has held that a document is eligible for work product protection if it has been "prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202-03 (2d. Cir. 1998) (quoting 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure* § 2024 (2d ed. 1994)). Under Rule 26(b)(3), a party may obtain documents prepared in anticipation of litigation only upon a showing of "substantial need of the materials" and an

inability,"without undue hardship, [to] obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3); *see also Adlman*, 134 F.3d at 1202-03.

The work product doctrine distinguishes between fact work product and opinion work product.  *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).  Fact work product comprises factual material, "including the result of a factual investigation," whereas "opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(3)).  Opinion work product is accorded a heightened standard of protection.  *See id.; see also Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (holding that opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship").  However, to be entitled to this heightened protection, "the party asserting the privilege must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.'" *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183-84 (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)).

*B. Analysis Under Rule 26(b)(3)*

There is no dispute that the materials sought fall within the scope of Rule 26(b)(3).  Johnston, acting as an agent of Meyer's attorney, produced and obtained the data and photographs in anticipation of Meyer's criminal prosecution.  The Court must therefore assess whether the Counterclaim Plaintiffs have made the necessary showing under Rule 26(b)(3).

Based on the unique circumstances of this case, the Court is persuaded that both prongs of the Rule 26(b)(3) showing have been met.  With regard to the substantial need prong, Counterclaim Plaintiffs' proposed expert, Chase, has asserted that the state police investigation is inadequate to support a reasoned opinion on significant aspects of the crash.  (Counterclaim Plaintiffs' Mot. to Compel, Ex. 1.)  As the Court noted earlier, there is a wide disparity between the quality of the equipment used by the state troopers and by Johnston.  (Mot. to Compel, Ex. 1.)  Although there is some indication that Johnston's data may support the conclusions reached by the state police investigation (Illuzi Aff. ¶ 11, Dec. 15, 2006; Hr'g Tr. 57:25-58:7, May 29, 2007), Counterclaim Defendants have signaled that they will challenge that investigation (Ballinger Dep. 48:24-50:24, Nov. 3, 2006).  In addition, Counterclaim Defendants may choose not to call Johnston as an expert witness in this matter.  These facts provide a sufficient basis for concluding that Counterclaim

Plaintiffs have a substantial need to access the physical evidence recorded by Johnston.  This is particularly true in light of Trooper Ballinger's admission that Johston's diagram of the scene "would be much better" than anything produced by the state troopers.  (Ballinger Dep. 94:21-22.)

With regard to the second prong, Counterclaim Plaintiffs have presented evidence showing that this factual evidence could not be obtained through any other means without undue hardship.  Counterclaim Defendants voiced concern that an investigation may have been conducted by another private accident reconstructionist, John Kwasnoski.  (Counterclaim Defs.' Opp'n to Mot. to Compel 4.)  Counterclaim Plaintiffs have submitted a letter from Kwasnoski indicating that, although he reviewed the state police investigation, he neither conducted his own investigation nor verified the underlying data.  (Mot. to Compel, Ex. 11.)  Counterclaim Defendants have also suggested that Chase could conduct his own investigation of the accident scene.  (Opp'n to Mot. to Compel 3, 4.)  However, an investigation of roadway conditions conducted many years after the fact would be a poor substitute for one conducted within seventy-two hours of the accident.

In sum, the Court finds that Counterclaim Plaintiffs have carried their burden and that discovery should be had.  Nonetheless, the Court notes that this ruling does not address

any issues of admissibility that may arise with regard to Johnston's documentation of the physical evidence or any expert testimony founded upon it.

*C. Counterclaim Defendant's Objections*

Counterclaim Defendants have objected to the requested discovery, arguing that the Court already decided the issue at the May 29, 2007, hearing.  (Opp'n to Mot. to Compel 2, 3.) Counterclaim Defendants assert that "[t]he Court specifically held that [Counterclaim] Plaintiffs were not entitled to obtain a copy of [the] computerized survey."  (Opp'n to Mot. to Compel 3.) After a close review of the docket and transcript, the Court disagrees.  The Court finds that its holding at the prior hearing was a much narrower one:  The Court denied Counterclaim Plaintiff's Motion to Produce (Doc. 77) solely because it was premature.  (Hr'g Tr. 70:17, May 29, 2007.)

At the May 29, 2007, hearing, the Court discussed with the parties the relevant procedural and substantive requirements under Rule 26(b)(3) at length.  In addition, the Court admonished the parties to bear in mind the different showings required to compel discovery of fact work product as opposed to opinion work product.  However, because the motion was premature, the Court did not reach the issue of whether Counterclaim Plaintiffs had met their burden, nor whether the material sought was fact or opinion work product.  The instant motion presents the Court with

7

its first opportunity to adjudicate these questions.[1]

Counterclaim Defendants are correct in observing that the Court expressed reservations regarding what type of material would be discoverable under Rule 26(b)(3).  In particular, the Court stated that it might be reluctant to compel Johnston to produce and furnish to Counterclaim Plaintiffs materials that involved his opinions as opposed to his factual observations of the scene.  (Hr'g Tr. 62:20-63:1, May 29, 2007.)  After reviewing the parties' briefing with regard to the instant motion, the Court is persuaded that the data sought by the instant motion does not comprise opinion work product.  Chase has averred that the diagrams sought simply represent the physical data collected by the total station and do not involve any external human input. (Mot. to Compel, Ex. 1.)

Moreover, apart from their reference to the May 29, 2007, hearing, Counterclaim Defendants have offered no evidence that any of the specific materials sought constitute opinion work product.  The burden of proof on this issue is with the party asserting the privilege, and Counterclaim Defendants have not carried this "heavy burden."  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 184.

---

[1] It is worth noting that the earlier motion to produce is distinguishable from the instant motion to compel in many respects.  Not only was the earlier motion premature, that motion also sought much broader disclosures and was supported by a lesser showing.

Counterclaim Defendants have also objected to any extension of the expert witness disclosure deadline, citing Counterclaim Plaintiff's delay in filing the instant motion.  The history of correspondence between the parties indicates that the Counterclaim Plaintiffs likely could and should have filed the instant motions many months earlier.  The Court does not wish to encourage this type of delay; however, depriving Counterclaim Plaintiffs of the opportunity to call the specified expert witnesses would be too drastic a sanction.  In addition, the Court notes that Counterclaim Plaintiffs have represented that Counterclaim Defendants informally agreed to extend the expert witness disclosure deadline to March 24, 2008.  The instant motions were both filed before this date.  As such, the Counterclaim Plaintiffs are entitled to their denarius even though they filed at the eleventh hour.

### III.  CONCLUSION AND ORDER

For the reasons, set forth above, Counterclaim Plaintiffs' Motion to Compel (Doc. 190) and  Counterclaim Plaintiffs' Motion for Protective Order (Doc. 198) are GRANTED.  The Court hereby ORDERS that Counterclaim Defendants produce the requested discovery by April 15, 2008.  The Court further ORDERS that Counterclaim Defendants disclose the expert reports of Brian Chase and Stephen Shapiro by May 1, 2008, and that depositions of these expert witnesses not be had until after this date.

Dated at Burlington, Vermont this 9th day of April, 2008.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge
